UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| CONSTANCE L. MAXWELL, ) | Case No. EDCV 10-1579-CW |
| ) Plaintiff, ) | DECISION AND ORDER |
| vs. ) | |
| MICHAEL J. ASTRUE, ) Commissioner, Social ) Security Administration, ) | |
| ) Defendant. ) | |

The parties have consented under 28 U.S.C § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of disability and disability insurance benefits. For the reasons stated below, the Magistrate Judge finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

**I. BACKGROUND**

Plaintiff, Constance Maxwell, was born on September 3, 1953, and was fifty-two years old on the date last insured. [Administrative Record "AR" 19.] She has a high school education and past relevant work experience as a mail handler for the U.S. Postal Service. [AR 19, 26.] Plaintiff alleges disability on the basis of fibromyalgia, cervical and lumbar spine impairment, severe back pain, joint arthritis, and depression. [AR 108.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged and filed on October 15, 2010. On April 22, 2011, defendant filed an Answer and plaintiff's Administrative Record ("AR"). On June 24, 2011, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability and disability insurance benefits under Title II of the Social Security Act on April 23, 2007, alleging disability since August 1, 1999. [AR 8.]

After the application was denied initially and upon reconsideration, plaintiff requested an administrative hearing, which was held on December 2, 2008, before Administrative Law Judge ("ALJ") Lowell Fortune. [Transcript, AR 16-41.] Plaintiff appeared with counsel, and testimony was taken from plaintiff [AR 19-37], medical expert ("ME") Samuel Landau, M.D., [AR 20-22], and vocational expert ("VE") Sandra M. Fioretti [37-40].

The ALJ denied benefits in an administrative decision filed on April 13, 2009. [AR 8-15.] When the Appeals Council denied review on September 1, 2010, the ALJ's decision became the Commissioner's final decision. [AR 1-3.] This action followed.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decisions should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment for that of the Commissioner. Reddick, 157 F. 3d at 720-721; see also Osenbrock, 240 F. 3d 1162.

## V. DISCUSSION

### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits, a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C.§ 423(d)(1)(A).

Disability claims are evaluated using a five step test:

> Step one: is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404 Subpart Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S.137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-1099; 20 C,F,R § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functioning capacity ("RFC")[1], age, education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R § 404.1520.

**B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found plaintiff last met the insured status requirements of the Social Security Act (the "Act") through September 30, 2005. [AR 10.] The ALJ found that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured (step one); that prior to her date last insured ("DLI") plaintiff had "severe" impairments of fibromyalgia/chronic pain and right shoulder disorder (step two); and that she did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 10-11.]

The ALJ found that plaintiff has the RFC to perform light work by standing or walking two hours of an eight hour workday; sitting six hours of an eight hour workday; lifting ten pounds frequently and twenty pounds occasionally; stooping and bending occasionally; working above shoulder level occasionally; with a preclusion from climbing ladders and balancing or working at heights (step four). [AR 12-14.]

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. §404.1569a(c).

1    The ALJ found that this RFC would permit plaintiff to perform her past relevant work as a
mail handler. [AR 14.]  The ALJ concluded that because plaintiff could perform her previous
relevant work as generally performed, plaintiff was "not disabled" as defined by the Act. [AR 14-
15.]

**C. ISSUES IN DISPUTE**

The parties' Joint Stipulation identifies as disputed issues whether:

1. The ALJ erred in rejecting the opinion of treating physician, Kendall Scott, M.D.;

2. The finding that plaintiff suffers no legally severe mental impairment is supported by substantial evidence, and;

3. The finding that plaintiff is not credible is supported by substantial evidence.

[JS 6.]

**D. ISSUE ONE: DR. SCOTT**

The first issue is whether the ALJ properly rejected the opinions of treating physician, Kendall Scott, M.D., in finding that plaintiff retained the physical capacity to perform light work at all times before her date last insured ("DLI") of September 30, 2005.

Dr. Scott's letter does not specify the dates of any impairments he opined Plaintiff might have suffered, and, notably, it does not explicitly state that Plaintiff had any particular functional limitation prior to her date last insured. [See AR 204-205.]  Indeed, though the letter states that Plaintiff lived with pain for a number of years, it talks predominantly in the present tense and explicitly opines only with respect to Plaintiff's prognosis "at this time," supporting a finding only that Plaintiff suffered the impairments referred to as of 2007, almost two years after her DLI. [See AR 205.]  Accordingly, the ALJ declined to interpret the letter as supporting Plaintiff's allegations of disabling impairment prior to her DLI.  This was not materially in error.  While observations made after the insured period may be relevant in assessing a plaintiff's disability, see Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988), the letter itself does not opine that Plaintiff was disabled or suffered any particular functional limitation prior to her DLI.  In any event, it is the

province of the ALJ to resolved conflicts in the medical evidence. Thus, to the extent this letter is susceptible of more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).

Reversal is not warranted on this basis.

**E. ISSUE TWO: MENTAL IMPAIRMENT**

Plaintiff next argues that the ALJ improperly found her mental impairments "not severe" at step two of the sequential evaluation.

At step two, a Plaintiff is not required to establish total disability. Rather, the "severe impairment" requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 146 (1987). "The severity requirement increases the efficiency and reliability of the evaluation process by identifying at an early stage those [plaintiffs] whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Id. at 153. An impairment will be considered "non-severe" when medical evidence establishes only a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on the individual's ability to work even if the individual's age, education, or work experience were specifically considered." Social Security Ruling 85-28; Social Security Rule 96-3(p); Bowen v. Yuckert, 482 U.S. at 154 n.12.

Here, the ALJ applied proper standards in finding that the medical evidence showed Plaintiff suffered, at most, from a slight mental impairment prior to her DLI.

Only one record provides evidence of mental health treatment prior to September 30, 2005, an intake form completed by Kaiser physician Ana-Maria Osorle, M.D, dated August 27, 2002. [AR 282-85.] The form states: "client has problems with depression especially right before her periods. She is fine the rest of the time." Id. The ALJ did not err in concluding that this record fails to support a finding of severe mental impairment prior to 2005. A plaintiff who alleges disability based on subjective symptoms must produce objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged; this report fails to satisfy that burden. See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (mild or moderate depression insufficient).

The only other treatment records relevant to Plaintiff's mental health were created in 2006 or later, and the ALJ applied proper standards in finding that these records likewise did not support a finding of severe impairment during the relevant time period.

Among these are two intake-type reports filled out based on questions asked of Plaintiff by a Kaiser Permanente physician in December 2006. [AR 208-12, 219-20, 222-23.] These do not deal substantially with or opine in respect to the time prior to 2005. [Id.] Also included is a mental functioning report filled out by Ernest Zinke, M.D., who treated Plaintiff beginning in December 2006, and his related treatment notes. [AR 231-35, 239-48, 250-57, 260-61, 265-67.] In his report, Dr. Zinke states that Plaintiff suffered from disabling mental limitations beginning in January 1998. [AR 250.] Plaintiff urges that this notation supports her allegations of severe mental impairment prior to her DLI. The ALJ declined to give any credence to Dr. Zinke's statement that Plaintiff's mental impairment dated back to 1998, however, for several reasons. First, according to Plaintiff's own testimony Dr. Zinke filled in that date based on what Plaintiff told him as they completed the form together during an appointment. [See AR 14, 25.] The ALJ is not required to adopt the opinion of the treating psychiatrist when the report is not supported by his own clinical findings and, instead is based upon the self-reporting of an unreliable claimant. Thomas v. Barnhart, 278 F.3d 947 at 957; see also Bayliss v. Barnhart, 427 F.3d 1211, 1216-1217 (9th Cir. 2002) (ALJ properly rejected doctor's psychological assessment which were based on subjective complaints not founded by objective medical data); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir.1997) (ALJ may give less weight to or reject the opinion of a doctor which is based on the self-reporting of an unreliable plaintiff). Furthermore, as the ALJ noted, even to the extent Dr. Zinke opined Plaintiff was suffering from disabling mental functioning limitations in 2008,

7

three years after her DLI, his form is contradicted by his own treatment notes, in that in the RFC form he opines Plaintiff has "marked" impairments while in his notes he describes generally mild to moderate symptoms [compare AR 253-55 with AR 239-40, 244, 260, 265, 267]. See Batson, 359 F.3d 1190 at 1195 (treating physician's view was given minimal weight because it was contradicted by other statements and assessments of plaintiff's medical condition).

To the extent Plaintiff suggests the ALJ erred by declining to contact Dr. Zinke to obtain additional information about her mental state prior to the DLI, her arguments are unavailing. The ALJ's duty to contact a treating physician is triggered only if the record evidence is ambiguous or if the ALJ determines that the record is inadequate for proper evaluation. Tonapetyan v. Halter, 242 F.3d at 1150. Here, the ALJ did not find the record to be ambiguous or inadequate; he concluded the nature and substance of the medical record showed Plaintiff did not suffer from a mental impairment that had more than a slight impact on her ability to work. This is not improper. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (finding that the record was neither ambiguous nor inadequate, and ALJ had no duty to develop record by diagnosing plaintiff's herniated discs when plaintiff did not submit medical records or testimony establishing the back condition); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not have a duty to re-contact plaintiff's treating physicians where the ALJ found, with support in the record, that the evidence was adequate to make a disability determination); Duenas v. Shalala, 34 F.3d 719 (9th Cir. 1994) (ALJ did not have duty to develop the record when plaintiff provided only sketchy information about covered employment and did not request that the ALJ develop the record.).

In sum, because no evidence of weight supports a finding that plaintiff had any mental limitations prior to 2006, the step two finding is not materially in error.

**F. PLAINTIFF'S CREDIBILITY**

Last, Plaintiff argues that the ALJ erred in finding her testimony not to be credible.

If the ALJ chooses to disregard a plaintiff's testimony, he must provide "clear and convincing" reasons for so doing. Valentine v. Commissioner of Social Security, 574 F.3d 685,

693 (9th Cir. 2009). The reasons he articulates must be specific and cogent. Lewin v. Schweiker, 654 F. 2d 631, 635 (9th Cir. 1981).

The ALJ may consider the following factors, among others, in weighing a plaintiff's credibility: (1) the plaintiff's reputation for telling the truth (2) inconsistencies in the plaintiff's testimony or conduct (3) the plaintiff's daily activities (4) the plaintiff's work record (5) testimony by physicians or third parties. Thomas, 278 F. 3d 947 at 958.

Here, the ALJ specifically articulated multiple, legally sufficient reasons for declining to credit Plaintiff's statements regarding the extent of her limitations.

First, the ALJ noted that plaintiff had made inconsistent statements about her medical history, detracting from her credibility. Plaintiff had testified to seeing her doctors regularly, with the longest time between each appointment being six to eight months. The record shows, however, that there were substantial gaps in treatment of longer than six to eight months, even of periods up to more than two years. [See AR 12, 14.] Further, plaintiff's lack of consistent treatment alone can be a reason to discredit her testimony. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (finding plaintiff's lack of treatment for three or four months was an indication that plaintiff's pain was not severe enough to motivate her to seek treatment).

Second, Plaintiff testified that she had not worked for pay or any other compensation for any period of time since her alleged onset date of August 1, 1999, but she previously reported working up until 2001 [AR 141] and on government earnings records she reported income in 2000 [AR 104]. These inconsistencies similarly detract from her credibility. See Thomas, 278 F.3d 947 at 959 (finding that plaintiff's inconsistent statements rendered her not credible).

Last, the ALJ found the objective medical evidence failed to fully support the Plaintiff. See Lewis v. Apfel, 263 F.3d 503, 511 (9th Cir. 2001) (one reason for which an ALJ may discount testimony is that it conflicts with medical evidence). As the ALJ noted, the treatment records and opinion evidence relating to the time *prior* to her DLI are spare and do not support her statements that she was disabled during that time. [See AR 13-14.]

1      Thus, the ALJ properly rejected plaintiff's testimony, providing legally sufficient reasons and examples of how her testimony was contradicted by the record. The ALJ did not materially err in the credibility assessment.

### **VI. ORDERS**

Accordingly, **IT IS ORDERED** THAT :

1. The decision of the Commissioner is **AFFIRMED.**

2. This action is **DISMISSED WITH PREJUDICE.**

3. The clerk of the Court shall serve this Decision and Order and Judgment herein on all parties or counsel.

Dated: July 20, 2011

                                                           /s/ Carla M. Woehrle
                                                          CARLA M. WOEHRLE
                                                          United States Magistrate Judge